UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CLAIRMONT DONALD,

                        Plaintiff,

-against-

STACIE BENNETT, et al.,

                        Defendants.

**OPINION & ORDER**

24-CV-03144 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

      Clairmont Donald ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, commenced this action in April 2024 (Doc. 1). On February 3, 2025, Plaintiff's second amended complaint was docketed, pressing claims under 42 U.S.C. § 1983 against Superintendent Stacie Bennett, Dr. Mikhail Gusman, Nurse Practitioner Terrie Armbruster, Nurse Administrator P. Paige-Connier, (the "Sullivan County Defendants"), John Doe, and Albany Medical Center (together with the Sullivan County Defendants and John Doe, "Defendants") predicated upon violations of his constitutional rights. (Doc. 35, "SAC").[1]

      The Sullivan County Defendants filed a motion to dismiss the Second Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on February 6, 2025. (Doc. 36; Doc.

---

[1] Plaintiff had filed, with the Court's permission, an amended Complaint on January 3, 2025. (Doc. 32). Plaintiff did not receive leave to file a Second Amended Complaint. The Sullivan County Defendants, however, did not object to Plaintiff filing another amended pleading. Moreover, in their memorandum of law, they state that they are seeking the dismissal of the "Second Amended Complaint" (Doc. 38 at 4) and attach, as an exhibit to a declaration in support of their motion, Plaintiff's Second Amended Complaint as the operative pleading (Doc. 37, Ex. A). Accordingly, the Court grants Plaintiff leave to file the Second Amended Complaint *nunc pro tunc* and deems the Second Amended Complaint (Doc. 35) the operative complaint in this action. *See Newsome v. New York City Fam. Ct.*, No. 24-CV-05265, 2025 WL 1503854, at *1 (S.D.N.Y. May 27, 2025) (approvingly recounting the Magistrate Judge's decision to "grant[] Plaintiff leave to file the Second Amended Complaint *nunc pro tunc*, making it the operative complaint in this action" where the defendants did not object to the plaintiff's "fail[ure] to comply with Federal Rule of Civil Procedure 15"); *see also In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-02450, 2015 WL 7018369, at *10 (S.D.N.Y. Nov. 12, 2015) (deeming amended complaint timely filed *nunc pro tunc*).

37; Doc. 38, "Def. Br.").[2] Albany Medical Center, which has not yet been served with process, did not join this motion.[3]

Pursuant to the Court's Order, Plaintiff's deadline to oppose the motion to dismiss was March 12, 2025. (Doc. 41). Plaintiff failed to file his opposition by that date. On March 26, 2025, the Sullivan County Defendants filed a letter stating that they will "not file a reply" because Plaintiff "has not opposed the motion." (Doc. 42). Two days later, Plaintiff's opposition was docketed. (Doc. 44, "Opp.").[4] After Plaintiff's opposition was docketed, the Sullivan County Defendants did not file, or seek an extension to file, a reply.

For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff has a "history of cataract issues." (SAC at 4).[5] To that end, while Plaintiff was incarcerated at Sullivan County Correctional Facility, Defendant John Doe, an "eye doctor who comes to the facility," "told [] Plaintiff that he would need an operation" on his left eye. (*Id.*). After initially requesting a second opinion, Plaintiff consented to surgery—which took place at Albany

---

[2] The Court notes that the Sullivan County Defendants cite Doc. 32 as the "Second Amended Complaint" in their memorandum of law. (Def. Br. at 4). However, as noted above, the Second Amended Complaint is Doc. 35. (*See* Doc. 37, Ex. A).

[3] As noted *infra*, the Court will separately issue an Order of Service for Albany Medical Center.

[4] Although Plaintiff's opposition was docketed on March 28, 2025, it was dated March 12, 2025. (Doc. 44). "[U]nder the prison mailbox rule, the date of filing is deemed to be the date that the prisoner-plaintiff delivered his [filing] to a prison guard for mailing to the court, which is presumed to be the date that the [filing] was signed." *Crichlow v. Doccs*, No. 18-CV-03222, 2022 WL 6167135, at *2 (S.D.N.Y. Oct. 7, 2022). Under this well-established rule, Plaintiff's opposition was timely filed. But even if Plaintiff's opposition was untimely, given Plaintiff's *pro se* status, the Court "will proceed as if its acceptance of the [Opposition] for filing constituted nunc pro tunc approval of [its] content." *Zeigler v. Annucci*, No. 23-CV-00707, 2024 WL 4252682, at *5 n.11 (S.D.N.Y. Sept. 20, 2024) (alteration in the original; quoting *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, No. 12-CV-00974, 2015 WL 5729969, at *22 (S.D.N.Y. Sept. 30, 2015)).

[5] Citations to specific pages of filings on the docket correspond to the pagination generated by ECF.

Medical Center. (*Id.* at 4-5). Medical staff at Albany Medical Center placed "hooks . . . inside of [] [his] eye socket to keep his left eye intact." (*Id.* at 4).

Although "things appeared [] good at first" after the surgery, Plaintiff "started to see lines." (*Id.* at 5). He sought treatment from the facility medical department but was told that that he "had to give it sometime for it to heal." (*Id.*). The condition of Plaintiff's eye then deteriorated further. He started to "los[e] sight in his left eye" and suffered from "pain." (*Id.*). Eventually, on Thanksgiving Day 2023, "his retina [became] detached." (*Id.* at 4-5).

As a result, a "medical emergency" was declared, and Plaintiff was taken to the medical unit. (*Id.* at 5). Once there, Plaintiff was examined by a "regular nurse[]" and Defendant Armbruster, a "nurse pract[it]ioner." (*Id.* at 3, 5). Plaintiff, at some point thereafter, was also seen by Defendant Gusman, "the chief doctor of the facility." (*Id.* at 2). Plaintiff did not receive treatment for his detached retina until he was taken to an outside hospital—five days after Thanksgiving. (*Id.* at 2, 6).

Plaintiff is currently an inmate at Coxsackie Correctional Facility. (*Id.* at 1). He still suffers from his "medical condition," including headaches and a rapid deterioration of his vision. (*Id.* at 6). Plaintiff seeks compensatory and punitive damages, as well as injunctive and declaratory relief in the Second Amended Complaint. (*Id.* at 7).

## **STANDARD OF REVIEW**

I. Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action when the district court lacks the statutory or constitutional power to adjudicate it."

*Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019).[6] "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.  Rule 12(b)(6) Standard

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences

---

[6] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations . . . in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Liberally construed, Plaintiff presses claims against all Defendants for deliberate indifference to serious medical needs in violation of the Eighth Amendment of the United States Constitution under Section 1983. (*See generally* SAC). The Sullivan County Defendants seek the complete dismissal of Plaintiff's action. (Doc. 36). Although the motion to dismiss is only made on behalf of the Sullivan County Defendants, the Court considers the viability of the federal claim for relief against Defendant John Doe *sua sponte* by operation of 28 U.S.C. § 1915(e)(2)(B), which provides that the Court "shall dismiss the case at any time if the court determines that the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); *see Gray-Davis v. Rigby*, No. 14-CV-01490, 2016 WL 1298131, at *8 (N.D.N.Y. Mar. 31, 2016) ("With regard to the pleading sufficiency of this claim as against the unnamed Defendants, the Court notes that Defendants have not moved to dismiss this claim as against the four John Doe Defendant parole officers. . . . Ordinarily, the Court would not be able to *sua sponte* consider the pleading sufficiency of such a claim. However, here, the Court may do so, because Plaintiffs are proceeding *in forma pauperis*.").[7]

---

[7] However, the Court, in its discretion, will not consider Plaintiff's claims against Albany Medical Center before it has been served with process. 28 U.S.C. § 1915(e)(2)(B)(ii); *see Graham v. City of Albany*, No. 08-CV-CV-00892, 2009 WL 4263510, at *13 (N.D.N.Y. Nov. 23, 2009) (describing a Court's authority under § 1915(e)(2)(B)(ii) as "discretionary").

I.  Official Capacity Claims

Plaintiff asserts that his claims are against all Defendants both "in their individual and official capacity." (SAC at 1).[8] The Sullivan County Defendants argue that Plaintiff's official-capacity claims seeking monetary damages are blocked by operation of the Eleventh Amendment, and his claims seeking injunctive and declaratory relief are moot. (Def. Br. at 7-8). The Court agrees.

With respect to Plaintiff's official-capacity claims seeking monetary damages, the Eleventh Amendment directs that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This language bars suits, even those arising under federal law, against a state, or against a state employee acting in his or her official capacity, by one of its own citizens. See *Woods v. Rondout Valley Centr. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Nelkenbaum v. Jordy*, No. 19-CV-07953, 2020 WL 7630354, at *2 (S.D.N.Y. Dec. 22, 2020) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)

---

[8] Plaintiff appears to suggest that Defendant John Doe was employed by Albany Medical Center. (SAC at 1). Plaintiff also appears to suggest, in his Opposition, that Albany Medical Center is a private company. (Opp. at 1). If so, Defendant John Doe, as a private employee, cannot be sued in an "official capacity." *See Ellibee v. Leonard*, 226 Fed. App'x 351, 357 (5th Cir. 2007) (stating that employees of private companies "had no official capacities in which they could be sued"); *Jones v. Barry*, 33 Fed. App'x 967, 971 n.5 (10th Cir. 2002) (holding that "the [private prison] defendants are not state actors, and they do not have an 'official capacity' as that term is used under the Eleventh Amendment"). Regardless, as explained *infra*, even if Defendant John Doe could be sued in an official capacity, Plaintiff's official capacity claims are barred by the Eleventh Amendment and moot. Plaintiff also fails to state a deliberate indifference claim against Defendant John Doe in either an official or individual capacity.

(alteration in original)). To that point, it is well-settled that "New York has not waived its sovereign immunity in § 1983 lawsuits, nor has Congress abrogated the State's immunity." *Phillips v. New York*, No. 13-CV-00927, 2013 WL 5703629, at *3 (N.D.N.Y. Oct. 17, 2013) (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)); *see also Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011) ("Magistrate Judge Freeman properly concluded that Keitt's Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the [Eleventh] Amendment.").

Here, the Eleventh Amendment deprives this Court of subject-matter jurisdiction, and neither exception applies. Thus, insofar as Plaintiff presses claims for monetary relief against the Sullivan County Defendants and John Doe in their official capacities under 42 U.S.C. § 1983, those claims must be dismissed by operation of the Eleventh Amendment.

With respect to Plaintiff's official-capacity claims seeking injunctive and declaratory relief, such claims are generally permitted under the *Ex Parte Young* doctrine. Under this doctrine, "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *Mary Jo C. v. New York State & Loc. Ret. Sys.*, 707 F.3d 144, 166 (2d Cir. 2013). It is well-established, however, that "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). Plaintiff brings this action against former and/or current employees or administrators at Sullivan County Correctional Facility. (SAC at 1, 4). Plaintiff also alleges that Defendant John Doe provides care at Sullivan County Correctional Facility. (*Id.* at 4). Yet, according to the Second Amended Complaint, he has been transferred to Coxsackie Correctional Facility. (*Id.* at 1). As such, Plaintiff's claims for injunctive and declaratory relief against the Sullivan County

Defendants and John Doe in their official capacities are moot. *See Mitchell v. Annucci*, No. 21-2784-PR, 2023 WL 7648625, at *2 (2d Cir. Nov. 15, 2023) ("It is settled law in this circuit that an inmate's transfer or release from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

Accordingly, Plaintiff's official-capacity claims seeking monetary relief are dismissed against the Sullivan County Defendants and John Doe by operation of the Eleventh Amendment, and Plaintiff's official-capacity claims seeking declaratory and injunctive relief against these Defendants are dismissed as moot. This result does not affect the 42 U.S.C. § 1983 claims against Defendants in their individual capacities. The Court therefore considers the Sullivan County Defendants' arguments for dismissal of those claims for relief under Rule 12(b)(6).

II.    Personal Involvement

The Sullivan County Defendants argue that Plaintiff failed to plead the personal involvement of any of the Sullivan County Defendants in the alleged deprivation of constitutional rights. (Def. Br. at 11-12). "As a fundamental prerequisite, 'to establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation.'" *Lockett v. City of Middletown*, No. 19-CV-08255, 2021 WL 1092357, at *4 (S.D.N.Y. Mar. 22, 2021) (quoting *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017)). "Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint 'fatally defective on its face.'" *Id.* (quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987)). To show personal involvement, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

9

Here, Plaintiff does not allege that either Defendant Bennett or Paige-Connier was involved in his medical treatment or even saw him after his retina became detached. Nor does Plaintiff allege that they were involved with the surgery on his left eye. Instead, Plaintiff alleges only that Defendant Bennett "was the CEO of all the employees at the facility," that Defendant Paige-Connier "was in charge of the health department," and that, "[u]pon information and belief," Defendant Paige-Connier "instructed [that Plaintiff be put] in [an] isolation cell." (SAC at 1-3). This, "without more," is "insufficient" to show "personal involvement under [S]ection 1983." *Brown v. Cnty. of Westchester*, No. 22-CV-06146, 2024 WL 21937, at *9 (S.D.N.Y. Jan. 2, 2024); *see also Ellis v. Kim*, No. 23-CV-05309, 2024 WL 4882702, at *6 (S.D.N.Y. Nov. 25, 2024) (holding that the plaintiff's allegation that the supervisor defendant was aware of his medical treatment was insufficient to plead personal involvement under Section 1983).

On the other hand, Plaintiff has pled personal involvement under Section 1983 by Defendants Gusman and Arbruster. Most importantly, both Defendants examined him after his retina became detached on Thanksgiving Day. (SAC at 2-3, 5). Those allegations are sufficient at this juncture. *See Barzee v. Abdulla*, No. 23-CV-02328, 2024 WL 4836870, at *7 (S.D.N.Y. Nov. 20, 2024) (holding that the plaintiff had pled personal involvement for his deliberate-indifference-to-serious-medical-needs claim through his allegations that the defendant nurse "was present at the correctional-facility hospital but failed to provide him with adequate medical treatment"); *Calhoun v. UConn Health*, No. 23-CV-01453, 2024 WL 406239, at *4 (D. Conn. Feb. 2, 2024) (holding that the plaintiff had pled personal involvement by a John Doe doctor through the plaintiff's allegations that the doctor was the "first [to] treat[]" him and that his severe injury "was visibly apparent").

Accordingly, the Sullivan County Defendants' motion is granted as to Defendants Bennett and Paige-Connier for lack of personal involvement.[9]

III. Deliberate Indifference

The Sullivan County Defendants argue that Plaintiff failed to adequately plead his deliberate indifference claim against Defendants Gusman and Arbruster. (Def. Br. at 12). As noted *supra*, the Court will also evaluate the viability of Plaintiff's claims against Defendant John Doe.

"The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin*, 467 F.3d at 279 (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 844 (1994)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104 (alteration in original)). A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test, comprised of an objective component and a subjective component. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *see also Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4 (S.D.N.Y. Sept. 8, 2020) ("A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test.").

The objective component requires that the alleged deprivation in medical care be "sufficiently serious." *Salahuddin*, 467 F.3d at 279. A deprivation in medical care is sufficiently serious if (1) "the prisoner was actually deprived of adequate medical care" and (2) "the inadequacy in medical care is sufficiently serious." *Id.* at 279–80. The latter inquiry "contemplates

---

[9] Given the Court's ruling herein, the Court need not and does not address the Sullivan County Defendants' other arguments for dismissal of Plaintiff's claims against Defendants Bennett and Paige-Connier.

11

a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019); *see also Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (holding that the medical need must be a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain"). When medical treatment was provided, but a complaint alleges that treatment was delayed or inadequate, the relevant concern is the "particular risk of harm faced by a prisoner due to the challenged deprivation of care." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

"When the basis for a prisoner's Eight Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious to support an Eighth Amendment claim." *Id.* at 185–86 (emphasis omitted). "The Second Circuit has found that a delay in medical care constituted a constitutional violation in only limited circumstances, such as where officials deliberately delayed care as a form of punishment, where officials ignored a 'life-threatening and fast-degenerating' condition for three days, and where officials delayed major surgery for over two years[.]" *Williams v. Williams,* No. 13-CV-03154, 2015 WL 568842, at *3 (S.D.N.Y. Feb. 11, 2015) (cleaned up; collecting cases).

The second prong of the deliberate indifference test under the Eighth Amendment is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014). That is, the prisoner must state facts showing that the defendant "acted or failed to act while actually aware of a substantial risk that serious inmate harm will result." *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020).

Under this standard, Plaintiff fails to adequately plead the subjective element of his deliberate indifference claim against Defendant John Doe. Plaintiff alleges that John Doe, an eye doctor, "told [] [P]laintiff that he would need" an eye operation. (SAC at 4). Plaintiff also alleges that the John Doe failed to act "according to the follow up instruction after the initial surgery." (*Id.*). None of these allegations allows the Court to infer that Defendant John Doe was "actually aware of a substantial risk that serious inmate harm will result." *Horace*, 802 F. App'x at 14. Rather, Plaintiff appears to challenge Defendant John Doe's medical judgment in recommending the surgery and suggests medical malpractice by him for his conduct before and after the surgery. Neither of these grounds establish a claim of deliberate indifference. *See Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) ("[D]ifference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference."); *Curry v. Kim*, No. 22-CV-04127, 2022 WL 2702744, at *4 (S.D.N.Y. July 11, 2022) ("[S]imple negligence, even if it amounts to medical malpractice, does not establish deliberate indifference.").

By contrast, Plaintiff has adequately alleged his deliberate indifference claim against Defendants Gusman and Armbruster. Plaintiff's allegations about these Defendants' delay in referring him to an "outside hospital," or providing him care, for five days after his retina became detached satisfy the objective prong of a deliberate indifference claim. (SAC at 2-3, 6). To that end, given the nature of Plaintiff's injury, it is plausible that Plaintiff "faced" sufficiently serious "harm" to his left eye as a result of the five-day delay. *Smith*, 316 F.3d at 186; *cf. Thomas v. Arevalo*, No. 95-CV-04704, 1998 WL 427623, at *4 (S.D.N.Y. July 28, 1998) ("*Any patient with a suspected or established retinal detachment should be seen, on an urgent basis, by an ophthalmologist.*" (emphasis in the original; quoting The Merck Manual 2386 (16th ed. 1992))).

13

Plaintiff has also adequately pled the subjective element as to Defendants Gusman and Armbruster. According to the Second Amended Complaint, both Defendants examined Plaintiff after he was "taken to the medical unit" because of a "declared medical [] emergency" from Plaintiff's detached retina. (SAC at 2-3, 5). Plaintiff also alleges that the facility's "medical unit" possessed his "medical file." (*Id.* at 5). As such, a plausible inference can be made that Defendants Gusman and Armbruster were aware that Plaintiff had suffered a detached retina and was at substantial risk of serious harm. *See Azukas v. Semple*, No. 22-CV-00403, 2024 WL 691338, at *6 (D. Conn. Feb. 20, 2024) (holding that the plaintiff adequately alleged the subjective element of a deliberate indifference claim premised on a delay in treatment where the plaintiff pled that he shared his "history of the injury and his condition" with the defendant).

Accordingly, Plaintiff has plausibly alleged his claim for deliberate indifference to serious medical needs against Defendants Gusman and Armbruster. Plaintiff's deliberate indifference claim is dismissed as to Defendant John Doe.

## CONCLUSION

For the foregoing reasons, the Sullivan County Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's claims against Defendants Bennett and Paige-Connier are dismissed. Plaintiff's claim against Defendant John Doe is also dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Defendants Gusman and Armbruster are directed to file an answer to the Second Amended Complaint (Doc. 35) within 14 days of the date of this Order. The Court will separately docket a Notice of Initial Conference.

The Court will separately issue an Order of Service for Albany Medical Center.

The Clerk of Court is respectfully requested to: (1) terminate Bennett, Paige-Connier, and John Doe as Defendants; (2) terminate the pending motion (Doc. 36); and (3) mail a copy of this Opinion and Order to Plaintiff.

**SO ORDERED.**

Dated: White Plains, New York
July 15, 2025

PHILIP M. HALPERN
United States District Judge